## HOLMES v. FOSS.

BROKERS — COMMISSIONS—CONTRACTS— MODIFICATION — QUESTIONS
FOR JURY—INSTRUCTIONS.

> Whether a contract for the payment of commissions on the
> purchase of certain timber was made as claimed by plaintiff,
> and, if so, whether it was modified by the subsequent corre-
> spondence and conduct of the parties, *held*, under the evidence,
> to have been proper questions for the jury, and to have been
> submitted under proper instructions.

Error to Marquette; Stone, J. Submitted April 25,
1902. (Docket No. 5.) Decided September 30, 1902.

*Assumpsit* by David H. Holmes against Edgar B. Foss
for commissions on the purchase of certain timber. From
a judgment for plaintiff, defendant brings error. Affirmed.

*A. B. Eldredge* (*Simonson, Gillett & Clark*, of coun-
sel), for appellant.

*Button & Culver* (*Clark & Pearl*, of counsel), for
appellee.

MOORE, J. The plaintiff recovered a judgment of
$2,052.46 against defendant. The case is brought here by
writ of error. The questions involved so clearly appear
in the charge of the court to the jury that we reproduce it
here:

"Gentlemen, this is a suit brought by the plaintiff, Mr.
Holmes, against the defendant, Mr. Foss, in which the
plaintiff claims a certain commission to be due him of 3
per cent. upon the purchase price by said defendant of the
Michigan Land & Iron Company, Limited, of certain pine
timber that has been detailed before you. It is undisputed
in the evidence, gentlemen, that this pine timber was sold
finally to the defendant, Foss, for the sum of $64,900.
The plaintiff claims a commission upon the sale of 3 per

cent., which would amount to $1,947. If there was ever a duty upon the defendant to pay this sum, it is fair to say that the duty devolved upon the defendant as early as November 1, 1899. You may add 13 months' interest, or $105.46, if you find for the plaintiff, to that sum, making a total of $2,052.46, which, should you find for the plaintiff, must be the maximum of the verdict, or the limit. In fact, that is the sum that is claimed by the plaintiff. If the plaintiff is entitled to recover at your hands at all, he is entitled to recover that sum. If he is not entitled to recover that sum, he is not entitled to recover anything.

"Now, gentlemen, in this case bear in mind that, so far as establishing the contract is concerned and the showing of the breach thereof, the duty rests upon the plaintiff. The plaintiff must have a preponderance of evidence in the case showing you that the contract was made as he alleges it to have been made; that there was an absolute promise made by the defendant to pay him the sum of 3 per cent. upon the purchase price of the timber in question, provided it was purchased by the defendant. That it was eventually purchased by the defendant is not disputed; but it is disputed that the defendant ever made such a contract.

" Now, gentlemen, to come a little nearer to the case, the plaintiff claims that he met the defendant on the 26th of June, 1899, on the arrival of the train from St. Ignace. It is undisputed that prior to that time, running back a month or two before that time, Mr. Holmes, the plaintiff, had performed some service for Mr. Foss, the defendant, in the matter of looking over an alleged trespass in the vicinity of Au Train, for which he had rendered his bill, and which had been paid; and also there had been some negotiations between them before that time in reference to a sale to the defendant by Mr. Holmes of what is termed seven 40's of pine that Mr. Holmes owned or had an interest in, and the land looker of Mr. Foss (the defendant), Mr. Kaiser, had been with Mr. Holmes upon the seven 40's prior to the arrival of Mr. Foss in this city on the 26th of June, 1899. That far the evidence is undisputed. What occurred upon the arrival of Mr. Foss in this city upon that date is disputed. The plaintiff claims that upon being informed by Mr. Foss something in regard to the seven 40's, or the conversation arising upon that subject first, he then calls his attention to other lands that had valuable timber upon that he was interested in, and claims that he mentioned to him certain pine owned by the Mich-

igan Land & Iron Company, and went with him to the office of the Michigan Land & Iron Company, and there, in the presence of Mr. Stevens, the subject was discussed of the proposed purchase by Mr. Foss from the Michigan Land & Iron Company of certain pine. Now, gentlemen, he further claims that, leaving Mr. Foss there, an arrangement was made by the defendant that he was to meet him at the office of the Hotel Marquette in the evening. It is further claimed by the plaintiff that, having spent a great deal of valuable time in estimating and looking over this property, he was advised in regard to it, and he did meet Mr. Foss that evening at the hotel, and, after certain conversation with reference to the lands and the character of the timber,—the location of the land and the character of the timber,—stating to him that it was good, big timber, or words to that effect, along the line that it was valuable timber, that the question is asked by Mr. Foss of him, 'What will be your commission upon the purchase of this?' and he said, 'Five per cent. of the purchase price;' that the defendant says, 'That is too much; I won't pay it.' Plaintiff then claims that he stated, 'What will you pay?' And he said, 'Three per cent.' And he claims that he responded, 'I will accept it.' Now, gentlemen, the plaintiff claims the bargain was made then and there; that they then sat down and went over the subject of these lands with a map; that the lands were pointed out, the way in which the timber would come out best was explained, and that then and there the minds of the parties met upon the contract.

"Now, gentlemen, this is the claim of the plaintiff. Was there such a contract made? Look over the evidence bearing upon the subject. There is a square denial of it by the defendant. The defendant claims that the bargain there made was substantially as stated in the letter of July 16th, which probably should be the 18th, and he claims that the proposition was that he would give him 3 per cent., provided this timber should be purchased upon a satisfactory estimate to him at $5 per thousand stumpage. The burden of proof is upon the plaintiff to establish the making of this bargain in the first instance. Was there such a bargain made as is claimed here by the plaintiff? You are to look at all the surrounding circumstances. You may look at the subsequent conduct of the parties. Bring to bear all the evidence upon this subject,—those who were present, and state what the bargain was upon

that evening. If you shall say, by a preponderance of the evidence, that this contract was made as claimed by the plaintiff; that he, having imparted this information, which he claims he imparted, to Mr. Foss, that he had been with him to the Michigan Land & Iron Company's office and had introduced the subject of this land to him,—then, gentlemen, if there is any change claimed in this contract, it devolves upon the defendant to show that change.

" Now, there are two branches to this. If you shall say there is no preponderance of evidence in favor of the plaintiff that any such contract was ever made, then, of course, the plaintiff cannot recover here, and your verdict should be for the defendant. But, if you shall find that there was made such a contract as is claimed by the plaintiff, then you should not cease your inquiry, but then should say, was it subsequently modified, by the letter written by Mr. Foss, and the subsequent action and conduct of the parties? There I think the burden is upon the defendant. It shifts upon him to show the change in the contract, if you find it once established; but, if not established in the first instance, the plaintiff cannot recover.

" Certain requests have been passed to me, gentlemen, some of which I give you:

" The burden of proof is upon the plaintiff to make out his case; and, if you find the evidence equally balanced, you must find a verdict of no cause of action. You understand, gentlemen, when parties come into court, and before any evidence is introduced, the scales are even, upon the subject of evidence. Now, the evidence has been put in the scale on the part of the plaintiff. Evidence has been put in on the part of the defendant. To establish and make out the plaintiff's case, there must be a preponderance of evidence, so that it outweighs the evidence upon the other side; and if, at the close of all the evidence in the case upon this proposition and the making out of his case, the evidence is equally balanced, then there would be no preponderance, would there ? The scale would not preponderate in favor of the plaintiff; and there must be a preponderance of evidence before the plaintiff can recover.

" In determining the weight of the evidence, you should take into consideration the conduct of the plaintiff, and that from time to time he presented accounts to the defendant for looking this and other lands for him; that the timber of the Michigan Land & Iron Company was

bought September 12, 1899,—that is, the written contract was on that date; I think the evidence shows the purchase was closed a few days earlier, about the 1st of the month; that the plaintiff made no claim for commission until some time in October or November,—the plaintiff claims, at the time the contract was made by Stickney & Johnson with Mr. Foss, which was in October or November, and that he then called his attention to this subject-matter of commissions. That, however, is denied by the defendant; but you may consider that he made no claim for commission at least until October or November, and has never as yet presented a bill for the claim he seeks to recover in this case. No formal bill has ever been presented, gentlemen. It has been urged to you that he had presented bills for his services, and that they had been paid, but that no formal bill was ever presented in this case. It is true that he wrote him on the subject in December; but he has never as yet presented a bill for the claim he seeks to recover in this case. That he presented his last bill November 21, 1899, for services, and in all his communications up to October or November made no reference to commissions on the purchase. You must also take into consideration the manner in which he called defendant's attention to his claim in his letter to the defendant of December 4th, and the language used, and the amount of his demand.

" Now, gentlemen, in that connection I will call your attention to the letter of July 16th or 18th, written by the defendant to the plaintiff. If you shall find that the contract was made as claimed by the plaintiff in this case, then you should ask yourselves, under the evidence in the case, has that contract ever been changed? In the letter of July 16th— Now, you will bear in mind that it is claimed that this contract was made June 26th (20 days before the 16th, and 22 days before the 18th, of July; for this letter was written upon the 18th); that, 22 days after it is claimed by the plaintiff that this contract was made, this letter was written :

" ' D. H. HOLMES,
        " ' Marquette, Mich.
    " ' *Dear Sir:* Yours of the 17th is at hand,' etc. 'If you can assist us in buying this timber on a satisfactory estimate to us at $5 per thousand stumpage, we will pay you a commission of 3 per cent., as talked with you while the writer was at Marquette. We are willing to have the Michigan Land & Iron Company put a man in

the woods with Mr. Kaiser, they to agree on an estimate. Please see what you can do in regard to this, and let us hear from you. It may not be necessary to tell them that our man is out of the woods. Please let us hear from you by return mail, and oblige,

" 'Yours,

" 'E. B. Foss & Co.'

"Now, gentlemen, the plaintiff claims that such was not the agreement made. The plaintiff claims the agreement was, as I have already stated, an absolute agreement. The defendant claims that the agreement stated in this letter was substantially the agreement made on the 26th. But, as I say to you, if you find that the plaintiff is wrong, has not by a preponderance of evidence established his contract in the first instance, then he cannot recover; for, gentlemen, this timber was not sold at $5 per thousand stumpage, on an estimate to the defendant that was satisfactory. It was purchased upon an estimate of about 9,000,000 feet, which, at $5 per thousand, would be $45,000; but, instead of that, the defendant paid nearly $20,000 more than that. But, if you should find that the defendant is wrong in claiming this change from the contract made on the 26th, and if you should further find that the plaintiff had not entered upon the performance of his contract— And that involves, what was he to do under the contract, gentlemen? That is why I have called your attention to the claim of the plaintiff that he possessed this information; that he imparted this information to the defendant; that he accompanied him to the Michigan Land & Iron Company's office, and put him in communication with that company; and that he gave him the information in the evening at the hotel. If you shall say that he did this, and that this was a part performance on his part, then the writing of this letter to the plaintiff could not change a contract then existing, without the plaintiff's consent. But if you should say that he gave him none of this information; that Mr. Foss, under the evidence, had all this information before; that he merely had a conversation with him about this land and timber, which information he already possessed, so that the plaintiff had not entered at all upon the performance of the contract when this letter was written, then it might operate as a modification of the contract, if the contract was still executory; and it depends upon the facts in this case as to whether the contract was then executory. But if you should say, even, that it had been part performed by Mr.

Holmes, then you should look further, and see as to the conduct of the defendant subsequently in their dealings.

" The immediate answer to that letter is bearing date July 19th, in which Mr. Holmes says to the defendant, addressing him:

" ' E. B. FOSS,

" ' Bay City, Mich.

" ' *Dear Sir:*  Your letter received today, with check for $30, payment in full for labor.  Much obliged for same.  I think it advisable to have Kaiser come back and go on lands as soon as possible, as I have not told the Michigan Land & Iron Company that he is off the land.  I have been expecting a letter from you.  I would instruct Mr. Kaiser to go over these lands very carefully, for it is a rough country, and woods thick, and a man is apt to overlook a good deal of timber unless he estimates carefully.  It is also advisable to estimate burnt timber, and keep it separate from the other.  I think it better to stay away from the Michigan Land & Iron Company until your man is back on the land.  Then you can write for an extension of option, and in all probability you will get it.  Then I will go to them and do all I possibly can to aid you in making the purchase.  I think, when they know the condition of the timber, they will come down on their price.  You had better wire me when your man leaves there.

" ' Yours very truly,

" ' D. H. HOLMES.'

" Now, gentlemen, you see that in that letter nothing is said by Mr. Holmes upon the subject of his commission. He says nothing to him about it.  If you find that the facts are as Mr. Holmes claims them; that he had imparted this information, and had set Mr. Foss in communication with the Michigan Land & Iron Company, and had told him his knowledge of this timber, and that the contract was made as Mr. Holmes claims it was made; that he himself had procured the option; that he had got a man to go into the woods, and had been with them there, although he was paid for that service; if you shall say he had entered upon the performance of this contract, this mere silence upon this subject would not defeat his right to recover here.  But you may consider his conduct there upon the subject.  The delay of the plaintiff in making his claim for commissions for some time, or months, after the purchase of defendant of the lands or timber in question, is a strong circumstance to be considered by you in determining the weight to be given to his testimony.  You

have a right to consider the conduct of Mr. Holmes in this regard. You have a right to consider how he had dealt with Mr. Foss before; that the service performed by him, —whether he had been prompt in sending his bills or not, and whether he had been tardy in sending this bill. You have a right to consider this delay as conclusive against the plaintiff, if you are satisfied that the claim he now makes was an afterthought, and that he made no such agreement with the defendant at Marquette as he now claims. And, gentlemen, this conduct of the parties should be looked at with a view to aiding you as to what the agreement was at the Hotel Marquette on the 26th of June. But, of course, if you shall say that it was an afterthought on the part of the plaintiff, that no such agreement was ever made as he contends for here, then there could be no recovery in this case.

"Now, gentlemen, speaking of these agreements, they might be modified. They might have modified this agreement, even if it was made and established at the hotel on the 26th. It might be modified by consent of the parties, and changed. Even if a verbal agreement was made between the parties at Marquette, if, any time before the complete performance of the same, a new agreement was made, inconsistent with such former agreement, such former agreement was discharged, and plaintiff can recover only upon such new agreement. Now, that is, if their minds met upon a new agreement. Look at the conduct of Mr. Holmes. Did he assent to this proposition, contained in the letter of July 18th, either expressly or tacitly, by his conduct? If so assenting to that proposition, he cannot recover here; because the evidence is undisputed that the timber was not obtained at $5 per thousand, upon an estimate to the defendant that was satisfactory to him. The parties had a right to change or discharge any agreement made by them by a subsequent mutual agreement; and, if you find any such change or discharge to have been made in this case, the plaintiff can recover only upon the final agreement. Now, mind you, the parties had a right to change or discharge any agreement made by them by subsequent mutual agreement; not simply by an assertion by the defendant in that letter to him, but by an agreement of minds coming together and agreeing upon it. And that agreement might be evidenced by express language, or by conduct on the part of the plaintiff. But, gentlemen, if the contract was made, as Mr. Holmes claims it was, on the evening of the 26th

of June, then the writing to him by the defendant of this
letter of July 18th, or any other letter, after the plaintiff
had entered upon the performance of the contract, could
not change the contract.   For the plaintiff had a right to
say, 'My terms are fixed with you, and upon that I stand.'
But if his conduct was such, by his silence, as to mislead
the defendant into this, into his subsequent action, another
rule would apply, which I will call your attention to.   If
a verbal contract was made between the parties, as claimed,
at Marquette, and a subsequent agreement made between
them, by letter or otherwise,—that is, a meeting of their
minds,—changing the terms upon which commissions were
to be paid to the plaintiff, such verbal agreement was to
this extent modified and canceled, even if no change was
made in any of the other terms of the contract.   The in-
tention of the parties to change or discharge the original
contract need not be formally expressed, but may be evi-
denced by their conduct.

"If you find, from the evidence, that the plaintiff had
done nothing in pursuance of the verbal agreement or
offer made by the defendant at Marquette, before the
receipt by him of defendant's letter of July 18, 1899, the
plaintiff cannot recover, as the defendant had a right,
before the plaintiff had done anything in pursuance of
such understanding or offer, to withdraw or modify the
same, which was done by letter of that date.   I have
already said to you that it was shown by a preponderance
of evidence, as claimed by plaintiff, that the services con-
sisted largely of imparting information which Mr. Foss
had not at the time, putting him in communication with
them, and then showing him maps and giving him the
information at the hotel; and, if you find that to be the
fact, it could not be said that the plaintiff had not entered
upon the contract.   But, if he had done nothing in pursu-
ance of it, if he had not imparted any information, and
the contract was executory, to be performed in the future
by both parties, then it might be modified by the defend-
ant before the parties commenced performance.

"It appears from the testimony of the defendant and
Walter Foss that in January, 1900, they met the plaintiff
in Marquette; that plaintiff then made a claim against the
defendant for commissions on the purchase of the timber
in question; that in the course of this conversation he said
to the defendant that he had promised to pay him a com-
mission of 3 per cent. on this purchase, and that he had a

letter from the defendant to show it, and regardless of the price that defendant was to pay for the timber. If you find this testimony to be true,—that is, the testimony of defendant and Walter Foss,—it is a strong circumstance to be taken into consideration by you, going to show that plaintiff then relied on defendant's letter of July 18, 1899, as the basis of his right to recover against the defendant, and that he neither claimed nor had any demand or right of action against the defendant, except such as might be based upon the terms of said letter.

"The letter of the plaintiff, dated July 19th, in answer to defendant's letter of July 18th, does not in express terms accept defendant's offer of commission as contained in defendant's letter to him. In determining, however, whether it was intended as an acceptance, or is to be construed as such, you must take into consideration the conversation testified to by the defendant and Walter Foss; that the plaintiff has never presented a bill for his claim in this suit; that he allowed months to pass before he said anything in regard to it; the language of his letter of December 4, 1899, to defendant; his conduct in assisting in making the purchase, and saying nothing in regard to his claim, and making no claim against defendant for his commissions until a long time after the purchase; and all the circumstances of the case. How long a time was it, gentlemen, before he made his claim? That is a question of fact, asserted by the plaintiff and denied by the defendant. The plaintiff asserts that he made the claim in October or November, as I have already said, at the time the Stickney & Johnson contract was made with Mr. Foss; that Mr. Foss was here, and he made the claim. That would be within two months, gentlemen,—within a month and a half,—of the date of that contract. That would not be an unreasonable time to wait, gentlemen. But did he make his claim then? It is denied by the defendant. It is a question of fact for you to consider. His conduct, I say, in regard to it, is for you. Then, from the circumstances of the case, if you find that the defendant had a right to, and did, treat or consider the plaintiff's letter to him of July 19, 1899, as an acceptance of his offer of commissions on the basis stated in the defendant's letter of July 18, 1899, and that he had a right to, and did, consider, from all the circumstances in the case, that plaintiff had thereby accepted his offer, if the defendant relied thereon to his prejudice, then the plaintiff is estopped

from now making any claim against the defendant except upon the terms and conditions contained in these letters, and, under the evidence and pleadings in the case, cannot recover. Now, that is, gentlemen, if, by his conduct, his silence in the letter back, his answer back, his silence upon that subject, and then his subsequent conduct. If you shall say that his conduct was such as would lead a prudent man to believe that—as Mr. Foss, believe that—Mr. Holmes had accepted his proposition, in his conduct, etc., as to lead Mr. Foss on to pay a larger price than he otherwise would have paid for this timber, then the plaintiff ought not to recover, upon the ground of estoppel. The doctrine is a familiar one in the books that when a person, by his words or conduct, voluntarily causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief, so as to change his previous condition, the person inducing such belief will be estopped from afterwards denying the existence of such a state of things, to the prejudice of the person so acting. If a person knowingly and voluntarily so conducts himself in relation to his business as to justify persons dealing with him in supposing and believing that a certain state of facts exists, and such person so dealing with him relies on that inference and belief, the person so conducting himself will not afterwards be permitted to deny that such state of facts did exist, to the prejudice of the person acting upon such belief.

"Although you may find from the evidence that there was an understanding had between the parties at Marquette for commissions, as claimed by plaintiff, yet you may still find that the plaintiff cannot recover, as the parties had a right to change or modify any such understanding; and if you find that it was intended by the letters of July 18th and July 19th to change such understanding, or that these letters do change it, or are inconsistent with it so far as it affects the payment of commissions, and that the defendant had a right, under the circumstances in the case and the conduct of the plaintiff, to consider that such verbal agreement was changed by these letters and conduct, then the plaintiff cannot recover under the evidence and pleadings in the case.

"Now, gentlemen, I have substantially covered the case. I will give you one other request, and then explain what I mean by it. In arriving at your conclusion as to what the true arrangement or agreement between the

131 Mich.—32.

parties was, you will consider the letters passing between the parties, namely, the letter of the defendant of July 18th, dated in error July 16th, and the reply of the plaintiff, dated July 19th. They are entitled to special attention from you, as being in writing. You will consider whether, if the defendant's letter did not correctly state the true arrangement, the plaintiff would not have called attention to the misstatement, and whether it was not his duty to have called his attention to it, under all the circumstances in the case. The plaintiff said nothing, you remember, upon that branch of the subject. Would he have been apt to have said anything, gentlemen, if he believed it did not state correctly the correct position? As I say to you, if the contract had been made, and plaintiff's position is the true one in this case, and he had entered upon the performance of it, he was not obliged to. If not, he should have said something about it, or his silence would be taken as assenting, acquiescing in it, if it was still executory.

"I call your attention to the letter of December 4th, and I ought to read it to you. It refers to other matters. First, the letter of Mr. Holmes, because I have called your attention to the manner in which he presented his claim at that time. Perhaps I had better read it all:

"'MARQUETTE, Dec. 4, 1899.

"'E. B. Foss,

"'Bay City.

"'*Dear Sir:* Just returned from the woods, and find your letter here, and check for $50, payment in full for labor. Thanks for same. I went to see L. P. Crary about the land.'

"I don't know as it is necessary to read all that letter. It is one of considerable length, and I will pass down to the other subjects:

"'Would also be glad if you would advise me about the settle. ment of commissions on Michigan Land & Iron Company trade. Three per cent. on purchase price was agreed upon, you know. I leave tonight for 10 days in the woods. Hope to hear from you on my return. Yours truly,

"'D. H. HOLMES.'

"Now, gentlemen, I have spent some time in this matter, as I frequently do when I always say I will be brief. But now let us recapitulate, and leave this matter with you.

"In the first place, to establish the contract and services

as claimed by the plaintiff here, he must show them by a preponderance of the evidence; and if he does not show that the contract was made at the Marquette Hotel as he claims, and under the circumstances he claims, and with the preliminaries as he claims them leading up to it,—I mean as to his getting Mr. Foss in communication and imparting the information,—then the plaintiff cannot recover, unless he establishes this contract by a preponderance of the evidence in this case. If he does establish that contract by a preponderance of evidence in the case, then he cannot recover, providing the defendant has shown by a preponderance of evidence that this contract has been modified or changed in the respect claimed, to wit, limiting the commissions to 3 per cent. in case the purchase was made upon a scale satisfactory to the defendant, at $5 per thousand.    *    *    *

"*Mr. Button:* There is one piece of testimony in the case, uncontradicted, as I remember it, which is entirely lost sight of by the counsel for the defendant in their requests to charge, and that is, a meeting between the parties in this case, and the conversation, subsequent to the letters of July 18th and 19th, namely, the meeting at the depot on the 3d or 4th of August, at which time, I say, according to my recollection, the evidence is undisputed, the plaintiff told the defendant that it would be impossible to buy the timber at $5 a thousand stumpage, and that the defendant then replied, 'Well, go on and see what you can do.' I think your honor should, and so request that your honor, charge the jury that they may find that conversation to be a giving up by the defendant of any condition they might consider was annexed to the letter of July 18th.

"*The Court:* The jury will consider that evidence in connection with the other evidence, and say whether it is entitled to any weight, and, if so, give it such weight as in their judgment they think it is entitled to, under all the circumstances in the case."

We are favored with very long and able briefs in the case. Among other things claimed by the defendant is that the letters of July 18th and July 19th constitute the contract between the parties, and are conclusive, and a judgment ought to be entered here in favor of defendant. The pivotal question in the case is one of fact. Was the

agréement made as claimed by plaintiff? Or is the claim of the defendant the true one? The plaintiff and the defendant contradict each other. Mr. Garry corroborates the testimony of the plaintiff; Mr. Farrell, the testimony of the defendant. Mr. Stevens also corroborates his testimony. Mr. Stevens' cross-examination shows he testified differently on the first trial. He explains how he came to do so. It is said the rendering of his accounts, and the receipts of payments thereof, by Mr. Holmes, and his delay in claiming commissions, corroborate the version of defendant. On the other hand, it is said commissions were claimed at the first opportunity after the plaintiff learned of the purchase; that, when the claim was made in the letter of December 4th, defendant, instead of saying no commission had been earned, as he would have done if the claim of plaintiff was not true, replied under date of December 8th:

"The writer expects to be in Marquette in a short time, and will arrange in regard to that piece of timber of yours, and also talk to you about the other matter referred to in your letter. The writer finds his desk so full of papers that require his attention that he is unable to write further at this time."

And that in January the following correspondence occurred:

"MARQUETTE, MICH., Jan. 23, 1900.
"Mr. E. B. Foss,
    "Bay City, Mich.
"Dear Sir: Lawyer Miller has come to the conclusion that the title of timber in section 4—49—27 is all right, and I have instructed bank to send deed and draft to Bay City. If you decide to send me a check at any time before you come here outside of this deal, I will give you credit for it on Michigan Land Iron deal commission.
*  *  *                        Yours truly,
                        "D. H. HOLMES."

"Feb. 2, 1900.
"Mr. D. H. HOLMES,
    "Marquette, Mich.
"Dear Sir: The writer has been away from home

several days. The draft for the Danaher timber was paid some days ago. The first time the writer is in Marquette he will see you.　　　　　　　Yours truly,

"E. B. Foss & Co."

We think it will readily be seen that the record presents controverted questions of fact, which were proper to submit to the jury. Without discussing the several questions presented by counsel, we shall content ourselves by saying we think the case was fairly tried, and submitted to the jury with proper instructions as to the law. .

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.